**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ALEC DAVID BARNETT, JR.,** *et al,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-0470-KD-M** |
| | ) | |
| **BALDWIN COUNTY BOARD OF** | ) | |
| **EDUCATION,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on the motion for judgment on the pleadings filed by

defendants Baldwin County Board of Education, Superintendent Dr. Alan T. Lee, Board

President Norman Moore, Board Vice President Robert Callahan, Jr., Board Member David Cox,

Board Member David Tarwater, Board Member Elmer McDaniel, Board Member Angie Swiger,

Board Member Shannon Cauley, Principal Lee Mansell and Principal Chuck Anderson (docs. 29,

30); the response filed by Alec David Barnett, Jr. as parent and next friend of R.P., a minor,

Sidney Pennington as parent and next friend of D.P., a minor, Lenora Chapman as parent and

next friend of D.C., a minor, Renee Williams as parent and next friend of A.W., a minor, Andre

Stephenson as parent and next friend of L.S., a minor, Isabelle Martinez as parent and next friend

of C.M., a minor, and Lenza Lampkin as parent and next friend of R.L., a minor (doc. 32); and

the defendants' reply (doc. 33). Upon consideration and for the reasons set forth herein, the

motion is **GRANTED in part and DENIED in part**.

### I. Factual background

Plaintiffs are the parents or next friends of minor children who attend Foley Intermediate

School and Central Baldwin Middle School. R.P., D.P., D.C., L.S., C.M., and R.L. attend Foley

Intermediate. Student A.W. attends Central Baldwin. They allege that "[d]efendants have engaged in and continue to systematically engage in a racist and discriminatory pattern [policy or custom] of placing the overwhelming majority of African-American, Hispanic, bi-racial, Caucasian students with friends of color, and children whose family members are in inter-racial relationships in On Campus Suspension" in either an enclosed cubicle, the "black box", pushed against a wall or in a locked closet as punishment or discipline. Plaintiffs allege that while the students are confined, they are separated from their learning environment, are allowed to leave only for lunch and bathroom breaks which results in instances of the students soiling their clothes with urine, defecation or menstruation, or having to smell the stench of other students who previously occupied the "black box", and "as additional punishment" they are not allowed to have a snack.

Plaintiffs allege that defendants were put on notice of this corporal punishment and discipline of the students in February 2012 when plaintiff Barnett and members of the NAACP met with Principal Mansell and Superintendent Lee at Foley Intermediate. Plaintiffs allege that Defendants continue to utilize the cubicles and locked closets after this meeting.

Plaintiffs also allege that this race-based use of the cubicle and a locked closet denies these students and others similarly situated with access to equal educational opportunity and that while they are confined in the cubicle or closet "they did not receive sufficient educational instruction." Plaintiffs also allege that using the cubicle or a locked closet to isolate the students from the classroom and academic environment in either the hallway, in the classroom, in a separate facility, or at the front of the school near the principal's office, was extreme and inhumane, humiliating and intimidating, and subjected the students to ridicule.

Plaintiff Barnett alleges that R. P., a student with an individualized education program

(IEP) for Attention Deficit and Hyperactivity Disorder (ADHD) and Emotional Disturbance Disorder (EDD), was placed in a cubicle "in isolation from his classroom and academic environment . . . next to the principal's office at the front of the school . . . in order to punish, humiliate, and intimidate R.P" and subject R.P. to ridicule. (Doc. 3, p. 11)  Barnett also alleges that R.P. was placed in the cubicle without his consent and was not free to leave or use the bathroom without approval of administrators or employees of Foley Intermediate.  (Doc. 3, p. 16)  There is no allegation as to R.P.'s race.

Plaintiff Pennington alleges that D.P., a student with an IEP for ADHD and Irritable Bowel Syndrome (IBS), was placed in a cubicle "in isolation from the classroom and academic environment . . . next to the principal's office at the front of the school . . . to punish, humiliate, and intimidate D.P." and subject D.P. to ridicule.  Pennington also alleges that on "numerous occasions", D.P. was "placed in the corner of the classroom in a desk with the desk against the wall and his face facing the wall" and that he "did not receive adequate or any instruction from his teacher" and was ridiculed and ostracized.  On one occasion, D.P. was forced to use sandpaper to scrub a word from a brick, which resulted in his hand becoming sore, worn and bleeding. [1]Pennington alleges that D.P. "suffered severe pain when he was not allowed to use the bathroom." (Doc. 3, p. 12) Pennington also alleges that D.P. was placed in the cubicle without his consent and was not free to go to the bathroom, despite his IBS. (Doc. 3, p. 16) There is no allegation as to D.P.'s race.

Plaintiff Chapman alleges that D.C. was placed in a cubicle "in isolation from the classroom and academic environment . . . next to the principal's office at the front of the school .

---

[1]  Plaintiffs allege that "administrators at Foley Intermediate School had the word 'vulgar' written on a brick so that Plaintiff Sidney Pennington's son would have to scrub the word off as punishment." (Doc. 3, p. 12)

. . in order to punish, humiliate, and intimidate" her and subject her to ridicule. Chapman also alleges that D.C. was not allowed to leave the cubicle, and "on a few occasions, . . . Chapman had to bring a change of clothes because D.C. had urinated and once because of menstruation. (Doc. 3, p. 13) Chapman also alleges that D.C. was placed in the cubicle without consent and was not free to leave or to go to the bathroom without approval of administrators or employees of Foley Intermediate. (Doc. 3, p. 16) There is no allegation as to D.C.'s race.

Plaintiff Williams alleges that A.W., a student with an IEP for ADHD, was placed in a cubicle "in isolation from the classroom and academic environment . . . in a separate facility at Central Baldwin . . . in order to punish, humiliate and intimidate A.W." (Doc. 3, p. 13) Williams also alleges that A.W. was placed in the cubicle without consent and was not free to go to the bathroom without approval of administrators or employees of Central Baldwin. There is no allegation as to A.W.'s race.

Plaintiff Stephenson alleges that L.S., a student with an IEP. for Apraxia, was placed in a cubicle "in isolation from the classroom and academic environment . . . next to the principal's office at the front of the school . . . in order to punish, humiliate, and intimidate" L.S. L.S. could "smell the stench of urine . . . from previous students[.]" (Doc. 3, p. 14) Plaintiff Stephenson also alleges that on "numerous occasions", L.S. was placed in a locked closet and that while confined L.S. could not go to the bathroom without the permission of administrators." (Id.) Plaintiff Stephenson alleges that Principal Mansell was aware of this "extremely stressful condition that L.S. had to endure physically and mentally." (Id.) There is no allegation as to L.S.'s race.

Plaintiff Martinez alleges that C.M., a student with an IEP for Oppositional Defiance Disorder (ODD) and ADHD, was placed in a cubicle "in isolation from the classroom and

academic environment . . . in the front of the school next to the principal's office . . . in order to punish, humiliate, and intimidate C.M." and subject C.M. to ridicule.  (Doc. 3, p. 15) Martinez also alleges that Principal Mansell "would single C.M. out and search her backpack each day when she got off her bus[.]"  (Id.) Martinez also alleges that C.M. was placed in the cubicle for "nearly half of the 182 day school year" and "did not receive adequate and sufficient academic instruction." (Id.) Martinez also alleges that C.M. was placed in the cubicle without consent and was not free to leave or go to the bathroom without approval of administrators or employees of Foley Intermediate. (Doc. 3, p. 17)  There is no allegation as to C.M.'s race.

Plaintiff Lampkin alleges that R.L. was placed in a cubicle "next to the principal's office at the front of the school . . . in order to punish, humiliate, and intimidate R.L." and to subject R.L. to ridicule. (Doc. 3, p. 15)  Lampkin alleges that this happened during the fourth, fifth and sixth grades and that his teacher "prohibited R.L. from observing the blackboard as well [as] refused to instruct R.L. academically." (Id)  Lampkin also alleges that R.L. was "placed in a locked closet for multiple days at a time throughout his time at the Foley Intermediate School." (Id.)  Lampkin also alleges that R.L. was placed in the cubicle and the locked closet without consent and that "[f]or a period of three consecutive months R.L. was placed" in the cubicle "[w]hile his teacher instructed his fellow students. (Doc. 3, p. 17)  R.L. is alleged to be bi-racial.

## II.  Statement of the law

Pursuant to Rule 12(c), a party may move for judgment on the pleadings, after the pleadings are closed. Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Interline*

*Brands, Inc. v. Chartis Specialty Ins. Co.,* 749 F.3d 962, 965 (11th Cir.2014) (citing *Cunningham v. Dist. Attorney's Office for Escambia Cnty.,* 592 F.3d 1237, 1255 (11th Cir.2010) (internal quotations marks omitted). On motion for judgment on the pleadings, the court considers the complaint, answers, and the exhibits thereto. *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir.2000).

When the motion is based on allegations of failure to state a claim upon which relief can be granted, it is evaluated the same as a Rule 12(b)(6) motion to dismiss. *See Sampson v. Washington Mut. Bank,* 453 F. Appx. 863, 865 n. 2 (11th Cir.2011); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n. 8 (11th Cir.2002). In that regard, the allegations in the complaint must be accepted as true and the facts and all inferences must be construed in the light most favorable to the nonmoving party. *See Scottsdale Ins. Co. v. Pursley,* 450 F. Appx. 888, 890 (11th Cir. 2012). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To do so, the plaintiff must plead sufficient facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Plausibility" in this context, must be more than a "sheer possibility that a defendant has acted unlawfully," and if the complaint alleges facts that are "merely consistent with" liability, then the pleading "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citing *Twombly,* 550 U.S. at 557). Overall, the plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of [the] cause of action." *Twombly,* 550 U.S. at 555.

The Court may not consider matters outside the pleadings without converting the motion

into a motion for summary judgment. Fed. R. Civ. P. 12(d).[2]  However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).  Thus the Court may consider any documents attached to the complaint.  Also, the Court may consider documents attached to an answer if the documents are "(1) central to the Plaintiff's claim; and (2) undisputed, which "in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002)

### III.  <u>Analysis</u>

As a preliminary consideration, Defendants cite to both the complaint and the first amended complaint in the motion and reply.  In this circuit, an amended complaint supersedes the complaint it amends and it becomes the operative complaint in the action *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V Olympia Voyager,* 463 F.3d 1210, 1215 (11th Cir.2006)).  The amended complaint does not incorporate by specific reference to facts in the original complaint, and therefore, it does not fall under an exception to the general rule.  *See Liberty Mutual Insurance Co. v. Fleet Force, Inc.,* 2013 WL 3357167, *8, n. 54 (N.D. Ala. July 1, 2013) (explaining that an exception to the rule "exists when the pleader incorporates by reference allegations from prior pleadings into the new pleading.")   Therefore, the Court looks only to the first amended complaint (doc. 3).

---

[2] "(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

As a second preliminary consideration, the first amended complaint is a disfavored "shotgun complaint" which "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.,* all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002). The Eleventh Circuit disfavors shotgun pleadings such as the first amended complaint, explaining that shotgun pleadings "exact an intolerable toll on the trial court's docket." *Cramer v. Florida,* 117 F.3d 1258, 1263 (11th Cir.1997); *see also Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 979 n. 54 (11th Cir. 2008) (collecting cases). In *Pelletier v. Zwiefel,* the Eleventh Circuit explained that "[a]nyone schooled in the law who read these complaints, however, would know that many of the facts alleged could not possibly be material to all of the counts. Consequently, [the Defendants] and the district court had to sift through the facts presented and decide for themselves which were material to the particular cause of action asserted, a difficult and laborious task indeed." *Pelletier v. Zwiefel,* 921 F.2d 1465, 1518 (11th Cir.1991). Such is the case here.

### A. **Claims allegedly conceded by the Plaintiffs**

In their reply, Defendants argue that Plaintiffs did not respond to certain arguments raised by Defendants, and therefore, they have conceded those claims. However, the Court of Appeals for the Eleventh Circuit has explained as follows:

> As an initial matter, the district court dismissed Boyd's due process and malicious prosecution claims because it held that Boyd abandoned those claims by failing to address them in his response brief to the defendants' motion to dismiss. However, at the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint. *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir.2002). Accordingly, in considering the defendants' motion for judgment on the pleadings, the district court erred by going beyond the face of the complaint. Boyd did not abandon his due process

> and malicious prosecution claims by failing to adequately address them in his response brief.
>
> The appropriate inquiry at this stage of the litigation should have been whether the allegations of the complaint plausibly indicate that Boyd has a claim for relief. We find that he has not stated a claim for relief as to any cause of action.

*Boyd v. Peet,* 249 Fed.Appx. 155, 157 (11th Cir. 2007); *Stewart v. Bureaus Inv. Group No. 1, LLC,* - - - F. Supp. 2d - - -, 2014 WL 2462883, *19, n. 18 (M.D. Ala. June 2, 2014) ("Further, it is acknowledged that Ms. Stewart does not rebut every argument raised by Defendants in their opposition brief. At this stage of the litigation, the court will not deem any claim abandoned for Ms. Stewart's unresponsiveness to an argument lodged by Defendants. *Cf. Boyd v. Peet,* 249 Fed. Appx. 155, 157 (11th Cir.2007) ('[A]t the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint.') The focus here, like the focus during review of a motion to dismiss, belongs on the adequacy of the proposed pleading.") Although Plaintiffs failed to respond to many of Defendants' arguments as to why certain claims should be dismissed, the Court will not consider those claims as abandoned.

**B. Defendants' motion for judgment on the pleadings based upon Plaintiffs' failure to exhaust or attempt to circumvent the administrative remedies under the Individual with Disabilities Education Act (IDEA)**

Defendants allege that five of the seven students, R.P., D.P., A.W., L.S. and C.M., for whom the school system has provided an Individualized Education Plan (IEP), failed to exhaust their administrative remedies as required by the Individual's with Disabilities Education Act (IDEA), and therefore the Court lacks subject matter jurisdiction as to these students. Defendants argue that these five plaintiffs are "essentially claiming that the students were not provided a free appropriate public education in the least restrictive environment in violation of the IDEA." (Doc. 30, p. 3) Thus, even though asserting other constitutional or statutory claims, defendants argue that plaintiffs must exhaust first exhaust their remedies under IDEA.

Plaintiffs respond that "the First Amended Complaint plainly demonstrate[s] Plaintiffs' aim is to avail themselves of the remedies Congress afforded them under Title VI . . . [which] allows individual plaintiffs to sue directly in federal court" for race discrimination "by entities receiving federal funding." (Doc. 32, p. 3) Plaintiffs also argue that their Equal Protection claims brought pursuant to § 1983 are based upon race discrimination and thus, not subject to the IDEA's exhaustion requirement and therefore, "the exhaustion requirements under § 1415(l) of the IDEA, which focuses on the rights of children with disabilities, does not bar plaintiffs' claims under Title VI." (Doc. 32, p. 2)  As a basis for these claims Plaintiffs allege that the Defendants engaged in a policy and custom of "systematically targeting African-American, Hispanic, bi-racial, inter-racial relationships" and "a Caucasian student who has close friendships with children of color" and that their "discriminatory behavior is manifested by placing the Plaintiffs and an inordinate number of other minority students inside of the 'black box'." (Doc. 32, p. 3)

The Court is faced with the effects of the shotgun complaint.   While Plaintiffs assert that all claims are based solely on racially discriminatory pattern of placing their students and other similarly situated students in the cubicle or locked closets; that is not all they have plead. Plaintiffs specifically allege as part of the "Nature of the Action" as follows:

> 1. . . . Defendants implemented the policy of utilizing the "black box" irrespective of the fact that some students were special needs students with Individual Education Programs ("IEP") that prohibited such punishment for such diagnoses as irritable bowel syndrome, ADHD, and emotional disturbance disorder. . . .

(Doc. 3, p. 3)

As part of their "Factual Allegations", the Plaintiffs allege as follows:

> 25.  . . . Additionally, Defendants and their agents being fully aware of medical conditions that students suffered from, still refused to abide by the medical urgencies and IEPs of Plaintiffs' children and similarly situated students. . . .

(Doc. 3, p. 8)

> 32. While Plaintiffs' children and other similarly situated students were in the "black box" or locked closets they did not receive sufficient education instruction.

> 33. While Plaintiffs' children and other similarly situated students were in the "black box" or locked closets they did not receive sufficient educational instruction.

(Doc. 3, p. 9)

In their claims for "Damages for Fourth and Fourteenth Amendment Violation Arising from the Use of Excessive Discipline and Corporal Punishment" (Counts III, IV, VI, VII, and VII), Plaintiffs allege that "placing" the five students "with an Individualized Education Program (IEP) . . . in the 'black box' in isolation from the classroom and academic environment was extreme and inhumane" and "was fashioned in order to punish, humiliate, and intimidate" these students. (Doc. 3, p. 11-15)[3]

The IDEA was enacted in part "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A)-(B).  Also, the IDEA is based on the premise that disabled students should receive their educational instruction in the "least restrictive environment" possible. *See Bd. of Educ. v. Rowley,* 458 U.S. 176, 180–82, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).  After a student is identified as disabled, an IEP, "a comprehensive written statement that outlines the child's annual goals and the education and related services needed to achieve those goals[,]" is "developed by a term of the child's parents,

---

[3] Plaintiffs also raise other factual allegations regarding the placement of the students. *See* p. 3-5.

teachers, and school administrators." *Jennifer B. v. Chilton County Bd. of Educ.,* 891 F. Supp. 2d 1313, 1320 (M.D. Ala. 2012); *Draper v. Atlanta Indep. Sch. Sys.,* 518 F.3d 1275, 1280 (11th Cir.2008) (internal quotation marks omitted).  As part of providing the free and appropriate public education required by the IDEA and developing the IEP for students, a behavior intervention plan or a behavior modification plan may be developed to address behavioral issues. *See N.B. ex rel L.K. v. Demopolis City Bd. of Educ.,* 2012 WL 6093808 (S.D. Ala., Dec. 7, 2012); *J.D.P. v. Cherokee County, Ga. School District,* 735 F. Supp. 2d 1348 (N.D. Ga., Aug. 18, 2010); *M.W. ex rel. Wang v. Clarke County School Dist.,* 2008 WL 4449591, 18 (M.D. Ga. Sept. 29, 2008) ("The IDEA requires that 'in the case of a child whose behavior impedes the child's learning or that of others, [the school must] consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior [.]' 20 U.S.C. § 1414(d)(3)(B)(i). To the extent a child's behavior impedes his progress in school-or the progress of his classmates-parent training and a home behavioral intervention plan can be 'related services' required under the IDEA and its regulations. *See* 34 C.F.R. § 300.24 (2006) (defining 'related services' as 'supportive services as are required to assist a child with a disability to benefit from special education')."

    In *Honig v. Doe,* 484 U.S. 305, 324, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the Court explained that by enacting the Education of the Handicapped Act, a predecessor of the IDEA, Congress sought to prevent school systems from excluding disabled students from their placement in school on grounds of discipline, but recognized that disciplinary measures must still be allowed.  *Id*. at 325 ("Our conclusion that § 1415(e)(3)[4] means what it says does not leave

---

[4]  Now codified at 20 U.S.C. § 1415(j) and often referred to as the "stay-put" provision which prevents the school from unilaterally removing a child from the public school classroom while an administrative review proceeding is pending. *AW ex rel. Wilson v. Fairfax County School Bd.*,

educators hamstrung. The Department of Education has observed that, '[w]hile the [child's] placement may not be changed [during any complaint proceeding], this does not preclude the agency from using its normal procedures for dealing with children who are endangering themselves or others.' Comment following 34 CFR § 300.513 (1987). Such procedures may include the use of study carrels, timeouts, detention, or the restriction of privileges.")

    The IDEA does not "restrict or limit the rights, procedures, and remedies available under the Constitution ... or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter"[.] 20 U.S.C. § 1415(7). "The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities."[5] *N.B. v. Alachua County Sch. Bd.,* 84 F.3d 1376, 1378 (11th Cir.1996) (finding that plaintiff must exhaust administrative remedies before proceeding with a § 1983 claim for violations of the IDEA).

    Even when a plaintiff does not bring claims under the IDEA, the courts must look at the relief requested to determine whether the relief is available under the IDEA such that exhaustion

---

372 F.3d 674, 680 (4th Cir. 2004).

[5] The Eleventh Circuit further explained that "[k]ey reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." *N.B,* 84 F.3d at 1378–79 (citing *Ass'n for Retarded Citizens of Alabama v. Teague,* 830 F.2d 158, 160 (11th Cir.1987)).

of administrative remedies is required. *Babicz v. School Bd. of Broward County*, 135 F.3d 1420, 1422 n. 10 (11th Cir. 1998) ("any student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute"; invoking Section 504 of the Rehabilitation Act or the Americans with Disabilities Act). In that regard, Plaintiffs specifically alleged that "Defendants and their agents being fully aware of medical conditions that students suffered from, still refused to abide by the medical urgencies and IEPs of Plaintiffs' children and similarly situated students." (Doc. 3, p. 8) Plaintiffs seek a declaration that Defendants' actions "violate state and federal law" as well as injunctive relief to cease the use of the "black box and locked closets for punishment", an award of compensatory and punitive damages[6] for the injuries sustained, and reasonable attorneys fees and costs under § 1983. (Doc. 3, p. 20)

The Eleventh Circuit has held that the "IDEA's exhaustion requirement" applies to a "'broad' spectrum of claims." *A.L. ex rel P.L.B. v. Jackson County School Bd.*, 543 Fed. App. 1002, 1005 (11th Cir. 2013). The Circuit Court explained that the "exhaustion requirement applies to claims asserting the rights of disabled children under not only the IDEA, but also the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act, and the Constitution." *Id.* at n.4 (citing *M.T.V. v. Dekalb Cnty. Sch. Dist.,* 446 F.3d 1153, 1157–58 (11th Cir.2006)) ("any student who wants relief that is available under the IDEA must use the IDEA's administrative system, even if he invokes a different statute") (citations and internal quotations marks omitted); *School Bd. of Lee County, Fla. v. M.M. ex rel M.M.*, 348 Fed. Appx. 504, 512

---

[6] "[T]he fact that the plaintiff also seeks money damages under 42 U.S.C. § 1983 for violations of the IDEA [does not] make any difference. When parents choose to file suit under another law that protects the rights of handicapped children – and the suit could have been filed under the [IDEA] – they are first required to exhaust the [ISEA's] remedies[.]" *N.B.,* 84 F. 3d at 1379; *B.M. ex rel. M.F. v. Thompson,* 2013 WL 4547344, 8 (M.D. Fla.) (Aug. 27, 2013).

(11th Cir. 2009) (finding that the parents' "claims of retaliation and deprivation of civil rights brought under 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act, and their claim that the Board breached the terms of the Settlement Agreement" were properly dismissed for failure to exhaust under the IDEA administrative scheme).

The relief sought by the five IEP students, including not to be subject to black box discipline, is inextricably intertwined with the development of an IEP plan and the ability of the students to receive appropriate educational services.  Thus, the exhaustion requirement is applicable to their claims based on race as alleged in Counts I and II.  See *Wang v. Williamsville Cent. School Dist.*, 2010 WL 1630466, *5-6 (W.D.N.Y. Apr. 21, 2010) ("Plaintiffs next argue that, '[r]ather than consider K.G.'s disability in its discipline, the Defendant chose instead to racially discriminate against K.G.'… Thus, they apparently contend that their first through fourth claims for relief should be construed as race discrimination claims, not IDEA claims. Plaintiffs' attempt to recast their claims is unavailing. What they are alleging, in essence, is that the District knew it had certain obligations to KG because of his medical conditions, but it failed to act on that knowledge when it let another factor take precedence. The gravamen of their claim is the failure to provide appropriate services to KG; the purported reason for the failure—race discrimination—is secondary. Regardless of any improper motivating factor in disciplining KG, requiring a psychiatric evaluation, and denying a transfer to another school, Plaintiffs' first through fourth claims for relief all invoke KG's right to a free appropriate public education, and all state that the District's actions hindered that right. Accordingly, these claims fall under the IDEA.") (citations omitted).

As to Counts III, IV, VI, VII and VIII, claiming damages under the Fourth and Fourteenth Amendment brought pursuant to § 1983, these claims make no specific reference to

race as a basis for the alleged constitutional violations but instead specifically reference the fact that these students have an IEP.  Additionally, Plaintiffs add claims regarding other incidents of discipline and lack of educational instruction that are unrelated to the use of the cubicle or the locked closets.  For example, as to D.P., Plaintiffs allege that D.P. was placed in a desk in the corner of the classroom with his face toward the wall such that he "was not allowed to interact with other students and was prohibited from reading the blackboard while his teacher taught class . . . and did not receive adequate instruction from his teacher", was punished by being forced to remove a word from a brick with sand-paper, and that the Principal and other school officials were aware of his IBS and that he suffered pain when he was placed in the cubicle and not allowed to use the restroom. (Doc. 3, p. 12)  Also as to C.M., Plaintiffs allege that she was placed in the "black box for nearly half of the 182 day school year [and] did not receive adequate and sufficient academic instruction." (Doc. 3, p. 15)

Again because the relief sought – a change in the methods of discipline or behavior intervention or modification - could be obtained in an IDEA administrative procedure, these claims are barred.  *See K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.,* 2013 WL 6698072, *10 (11th Cir. Dec. 20, 2013) ("We join the First, Third, Fourth, Ninth, and Tenth Circuits, and hold that section 1983 actions for denial of rights conferred by the IDEA are barred because the IDEA's comprehensive enforcement scheme provides the sole remedy for statutory violations. Were there some right at issue conferred by the Constitution or other federal laws and not by the IDEA, we would be presented with a different question. The claims in this case though are entirely based on rights arguably conferred by the IDEA."); *Jennifer B. v. Chilton County Bd. of Educ.*, 891 F.Supp.2d 1313, 1322 (M.D. Ala. 2012) ("It is well established in the Eleventh Circuit that a plaintiff may not circumvent the procedures provided by the IDEA merely by

raising claims under another statute or seeking relief in federal court that the administrative agencies cannot grant.") Accordingly, Defendants' motion is GRANTED and all claims asserted on behalf of R.P., D.P., A.W., L.S. and C.M. in Counts I and II, and their claims asserted in Counts III, IV, VI, VII, and VIII are DISMISSED for failure to exhaust the administrative remedies under the IDEA.

Defendants also argue, in a footnote, that in "the interest of judicial economy" the Court should dismiss the claims of D.C. and R.L., who do not have an IEP, "since their claims are the same as those brought on behalf students who must exhaust their administrative remedies under the IDEA before filing this suit." (Doc. 30, p. 7, n.1 and n.2)  However, Defendants did not provide the Court with any case law to support their argument, nor has the court found any authority for such a request.

### C.  Defendants' motion for judgment as a matter of law that Plaintiffs' Section 1983 claims fail to state a constitutional or federal violation actionable under 42 U.S.C. § 1983.

Defendants argue that Plaintiffs[7] have failed to allege a constitutional violation and therefore, their claims brought pursuant to § 1983 should be dismissed.  Defendants argue that Plaintiffs allege that they should be treated differently because of their race or disability and that they do not allege that white students or students who were not eligible for special education were placed in a different setting when they were given on-campus suspension. Defendants also argue that the students were subjected to "passive punishment", not "corporal punishment", which did not rise to the level of a constitutional violation, *i.e.,* that did not involve a use of force that was tantamount to arbitrary, egregious, and conscience-shocking behavior.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a

---

[7]  The only federal claims remaining before the Court are those of students D.C. and R.L., who did not have an IEP.

constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir.2005). The parties do not dispute that the Defendants were acting under color of state law at all relevant times.

School boards[8] may not be held liable on the theory of *respondeat superior* but instead "a municipality may be held liable 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" *Doe v. School Bd. of Broward County, Fla*., 604 F.3d 1248, 1263 (11th Cir. 2010) (citation omitted). "In addition to identifying conduct attributable to the municipality, a plaintiff alleging municipal liability under § 1983 must show that the municipal action was taken with the requisite degree of culpability, *i.e.*, that the municipal action was taken with deliberate indifference to its known or obvious consequences." *Id*. (internal quotations and citation omitted).

To impose individual liability on the individual Defendants, Plaintiffs must allege either that Defendants personally participated in the alleged unconstitutional conduct or that they were liable as supervisors for the conduct of the persons who actually placed the students in on campus suspension. "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates unless the supervisor personally participates in the alleged constitutional violation or there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id*. at 1266 (internal quotations omitted) "This requisite causal connection can be established in the following circumstances: (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so or (2) when a supervisor's

---

[8] *Infra,* the Court has found that the constitutional claims against the individual Defendants in their official capacity are redundant to the claims against the Board and due to be dismissed.

improper custom or policy results in deliberate indifference to constitutional rights. *Id.* (internal quotation and citation omitted). "For a history of abuse to be sufficiently widespread to put a supervisor on notice, the abuse must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.*

As to Count II, Plaintiffs allege that Defendants deprived the students of their federally protected rights under the Equal Protection Clause "by unduly and disproportionately placing Plaintiffs' children in 'black boxes' and locked closets on the basis of race." (Doc. 3, p. 11) They allege that "Defendants directly and indirectly under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and/or wanton conduct heretofore described in this complaint." (*Id.*) Plaintiffs allege that Defendants had a policy or custom of "systematically targeting African-American, Hispanic, bi-racial, students whose parents were or are in inter-racial relationships, or Caucasian students with close friendships with student of color in the 'black box' or locked closets." (Doc. 3, p. 9) Although the Plaintiffs allege that they were targeted, absent from the first amended complaint is any specific allegation as to the conduct the students engaged in that formed the basis for their respective on campus suspensions and any allegation that students outside their protected class engaged in substantially the same conduct but were not punished or disciplined in the same manner. Since this pleading deficiency appears to be a matter of clarification (if such allegations are supported by facts), Defendants' motion for judgment on the pleadings as to Count II is **DENIED at this time.** Plaintiffs D.C. and R.L. are **ORDERED** to file on or before **October 20, 2014,** a second amended complaint to clarify and expand on their equal protection claim**.**

As to Counts V and IX, which allege violations of the Fourth and Fourteenth Amendments arising from the use of excessive discipline, Defendants argue that the disciplinary

actions taken do not rise to the "conscience-shocking" level. Plaintiffs respond that their substantive due process rights were violated by the discipline imposed.[9] Specifically they argue that placing the students "at tender ages" in the "unsanitary environment" in the black box or the locked closets "all day" or for "multiple hours at a time on a daily basis", "denying them food on a timely basis", and denying them the "ability to use the bathroom", was "unjustified and unrelenting confinement" that shocks the conscience.

In the first amended complaint, Plaintiffs allege that Defendants did not allow D.C. to leave the black box when she had to use the restroom and as a result "on a few occasions" her parent had to bring a change of clothes because she had soiled her clothes. Plaintiffs allege that by placing R. L. in the black box and in a "locked closet for multiple days at time throughout his time at Foley Intermediate", Defendants have violated his "clearly established rights under the Fourth and Fourteenth Amendments". (Doc. 3, p. 15) As to both students, Plaintiffs allege that this conduct was excessive discipline and corporal punishment that was extreme, inhumane, as "fashioned in order to punish, humiliate, and intimidate" the students and subjected them to ridicule and embarrassment.

In *T.W. ex rel Wilson v. School Board of Seminole County, Fla.*, 620 F. 3d 588 (11th Cir. 2010), the Eleventh Circuit was confronted with a factual circumstance wherein a cool down room was employed by the special education teacher as well as other disciplinary measures involving physical force that resulted in multiple allegations of abuse and excessive discipline.

_____

[9] Plaintiffs mention procedural due process in their first amended complaint but their factual allegations do not allege any constitutionally-inadequate process available through the school system to file grievances or appeals of the disciplinary decisions regarding the students. "To state a claim under § 1983 for denial of procedural due process, a plaintiff must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003).

In reaching its decision to affirm summary judgment in favor of the defendants, the circuit court explained that "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment ... may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Id*. at 599 (citing *Neal*, 229 F.3d at 1075.)   The Eleventh Circuit further explained that "[n]ot all corporal punishment cases arise under ... circumstances where "school officials, subject to an official policy or in a more formal disciplinary setting, mete out spankings or paddlings to a disruptive student.  Many involve less traditional, more informally-administered, and more severe punishments. The key inquiry is not what form the use of force takes but whether the use of force is related to [the student's] misconduct at school and ... for the purpose of discipline." *Id.* at 598-599.

The Eleventh Circuit explained that on summary judgment, the claim of "excessive corporal punishment has an objective and a subjective component, both of which must be met before a school official may be subject to liability. The evidence must support a reasonable inference that the punishment is obviously excessive as an objective matter and that [the teacher] subjectively intend[ed] to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." *Id.* at 600.  "To determine whether a use of force is obviously excessive, we consider the totality of the circumstances." *Id.* at 1075. Three factors are particularly relevant: "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id.*  The Eleventh Circuit explained that T.W. also presented claims of psychological injury and stated that the Court had "never considered whether corporal punishment that causes only psychological injuries can amount to a violation of substantive due

process." *Id.* at 601.  The Eleventh Circuit acknowledged that T.W. had also experienced physical injury, but then stated that "[i]t is clear that plaintiffs have not fared well where psychological damage forms either the sole basis of or is an element of the plaintiff's substantive due process claim, but we can imagine a case where an exercise of corporal punishment – even one that causes only psychological injury – might be so severe that it would amount to torture[.]" *Id*. at 602 (internal quotations and citations omitted).

The Court does not have sufficient information to conclusively determine whether a substantive due process violation has occurred.   Therefore, Defendants' motion for judgment as a matter of law as to Plaintiffs D.C. and R.L.'s constitutional claims under the Fourth and Fourteenth Amendments for excessive discipline is **DENIED at this time.**

**D. Defendants' motion for judgment as a matter of law as to Plaintiffs' claims for race discrimination brought pursuant to Title VI of the Civil Rights Act of 1964 (Count I).[10]**

1. Race of the Student

Defendants argue that Plaintiffs cannot maintain their action because the first amended complaint does not identify the individual students as members of a protected class because they identified as "African-American, Hispanic, bi-racial, Caucasian with friends of color, or students whose family members are in inter-racial relationships." (Doc. 3, ¶ 38)  Defendants also argue that Plaintiffs cannot amend their complaint by way of their response to the motion, and

---

[10] Congress has expressly abrogated the states' Eleventh Amendment immunity in 42 U.S.C. 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation . . . Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.")  "Section 2000d–7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims". *Garrett v. University of Alabama at Birmingham Board of Trustees*, 344 F.3d 1288, 1291 (11th Cir.2003); *accord Sandoval v. Hagan*, 197 F.3d 484, 493 (11th Cir.1999), *rev'd on other grounds*, 532 U.S. 275 (2001)).  Thus, the Plaintiffs may maintain a Title VI action against the Board.

therefore Plaintiffs' claims pursuant to Title VI should be dismissed.  Plaintiffs respond that all

of the students are students of color except D.P., who is Caucasian. (Doc. 32, p. 4-5)

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or

national origin, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §

2000d.   In that regard, Plaintiffs allege that the Baldwin County Board of Education (the Board)

"is a recipient of federal financial assistance" and that the Board "receives financial assistance

from the United States Department of Education". (Doc. 3, p. 6, 10)  As to their substantive

claims, Plaintiffs allege that "Defendants violated Title VI by discriminating against Plaintiffs'

children on the basis of race, buy implementing extreme and unorthodox punishment against

Plaintiffs' children and similarly situated students on basis of their race". (Doc. 3, p. 10)

However, Plaintiffs failed to sufficiently allege in the first amended complaint the "race,

color, or national origin" of the individual students but for R.L. who is alleged to be bi-racial.

(Doc. 3., p. 15) Since this pleading deficiency appears simple to rectify, Defendants' motion for

judgment on the pleadings as to Count I is **DENIED at this time.**   Plaintiffs are **ORDERED** to

file, on or before **October 20, 2014,** a second amended complaint to clearly allege the "race,

color, or national origin" of the students D.C. and R.L.

2.  Recipients of Federal Funds

Defendants also argue that Plaintiffs' allegation that the individual Defendants have

violated Title VI fails to state a claim upon which relief can be granted because the individual

Defendants are not the recipients of federal funds.  They assert that a Title VI action may only be

brought against a recipient.  Plaintiffs did not respond to this argument.

In *Shotz v. City of Plantation, Florida*, the Court of Appeals for the Eleventh Circuit

stated that "the text of Title VI also precludes liability against those who do not receive federal funding, including individuals." 344 F. 3d 1161, 1170 (11th Cir. 2003). The Circuit Court explained the contractual nature of the liability under Title VI and that such liability was limited to recipients of federal funding and "those who are in a position to accept or reject" the federally imposed conditions attendant to receipt of the funds, "as part of the decision whether or not to 'receive' federal funds." *Id.* The Circuit Court further explained that "[t]o conclude otherwise, and license individual liability for violations of Title VI, would exceed the allowed scope of government enforcement action under the statute. That 'power may only be exercised against the funding recipient, and we have not extended damages liability . . . outside the scope of this power.'" *Id*; *see also Godby v. Montgomery Cnty. Bd. of Educ.,* 996 F.Supp. 1390, 1413 (M.D.Ala.1998) ("only the local school district which actually receives the federal money may be held liable-not an employee of the entity."); *Karlen v. Westport Bd. of Educ*., 2010 WL 3925961, *10 (D. Conn. Sept. 30, 2010) ("Because the Board is the only defendant who receives federal funding, only the Board may be held liable for a Title VI violation.")

Plaintiffs did not allege that the individual Defendants are recipients of federal financial assistance or that the individual Defendants were in a position to accept or reject the conditions for receipt of federal funds. Thus, Plaintiffs have failed to plead sufficient facts that "allow[] the court to draw the reasonable inference that the [individual Defendants are] liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. Accordingly, Defendants' motion for judgment on the pleadings is **GRANTED** as to all claims against the individual Defendants in their individual and official capacity brought pursuant to Title VI.

### E. Defendants' motion for judgment on the pleadings on basis that the Plaintiffs' official capacity claims against the individual Defendants are duplicative of claims against the Board

Defendants argue that the civil rights claims against the individual Defendants in their official capacity based upon violations of federal law are due to be dismissed because suits against government officials in their official capacity are treated as suits against the entities that employ them. Plaintiffs' respond that the Defendants can be sued in their official capacities for declaratory and injunctive relief under 42 U.S.C. § 1983.

In *Kentucky v. Graham*, the Supreme Court explained that suits against defendants in their individual capacities seek to impose personal liability, but official-capacity suits, "in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" 473 U.S. 159, 166, 105 S.Ct. 3099 (1985) (internal citations omitted). Thus, where the "government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity." *Id.*, 166-167.

Relevant to this action, "[w]hen individual school administrators are sued in their official capacities, they are considered officers of the board of education." *Katherine S. v. Umbach*, 2002 WL 226697, *18 (M.D. Ala. Feb. 1, 2002) (citing *Godby v. Montgomery County Board of Educ.,* 996 F. Supp. 1390, 1403 (M.D.Ala.1998) (Section 1983 claims "against officers in their official capacity are 'functionally equivalent' to claims against the entity that they represent")); *M.R. v. Board of School Com'rs of Mobile County,* 2012 WL 2931263, *2 (S.D. Ala. July 18, 2012) ("Plainly, then, extensive authorities illustrate the well-entrenched principle that suits against both an official in his or her official capacity and the entity that official represents are redundant and unnecessary.") Therefore, Plaintiffs' official capacity claims against the individual defendants are redundant to those against the Board.

However, as previously stated, Plaintiffs seek a declaration that Defendants' actions

violate state and federal law as well as injunctive relief to cease the alleged continuing use of the "black box and locked closets for punishment". (Doc. 3, p. 4, 9, 20)[11] Under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), prospective injunctive relief may be obtained against state officials in their official capacities in order to prevent "*continuing* violations of federal law." *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1336–1337 (11th Cir.1999) (emphasis in original) ("the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law ... a plaintiff may not use the doctrine to adjudicate the legality of past conduct ... the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief); *Grizzle v. Kemp,* 634 F.3d 1314, 1319 (11th Cir.2011) ("Pursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment. Under the doctrine enunciated in *Ex parte Young* ... however, a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment.").  Additionally, as to any injunctive relief that may be available under state law, the Alabama Supreme Court has held that "[i]t is well settled, however, that '[i]njunctive action may be maintained against a state official [in his official capacity], if the official is acting beyond the scope of his authority or acting illegally." *Ex parte Dickson*, 46 So. 3d 468, 474 (Ala. 2010).

Therefore, Defendants' motion for judgment on the pleadings is **DENIED** to the extent

---

[11]  "Defendants used and continue to use the 'black boxes' and closets . . ."; "Moreover, the use of the 'black box' continued to be used and is still used to this day in the Baldwin County School System."

that Plaintiffs on behalf of D.C. and R.L. have brought civil rights claims for prospective injunctive relief against the individual Defendants in their official capacities.  To the extent that Plaintiffs on behalf of D.C. and R.L. bring their claims against the individual Defendants in their official capacity for non-injunctive relief, the Defendants' motion for judgment on the pleadings is **GRANTED** and these claims are dismissed.

### F. Defendants' motion for judgment on the pleadings that Plaintiffs' claim for punitive damages against the Board and the individual Defendants in their official capacity are barred

Defendants argue that punitive damages may not be awarded against the Board or the individual Defendants in their official capacity, and therefore, Plaintiffs have failed to state a upon which relief may be granted.  Defendants argue that in addition to the State constitutional immunity under Article 1, § 14, which also extends to the individuals Defendants in their official capacity, Code of Alabama § 6-11-26 precludes an award of punitive damages against the Board and the individual Defendants in such capacity.  Plaintiffs did not respond.

The Alabama statute states as follows:

> Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto.

Ala. Code § 6-11-26.

The Alabama Supreme Court held that "[i]t is well settled in Alabama that [l]ocal school boards are agencies of the State, not of the local governmental units they serve[.]" *Ex parte Phenix City Bd. of Educ.,* 109 So.3d 631, 632 (Ala.2012) (quoting *Ex parte Montgomery County Bd. of Educ.,* 88 So.3d 837, 841 (Ala.2012) (quoting *Ex parte Bessemer Bd. of Educ.,* 68 So.3d 782, 789 (Ala.2011))).  Thus, punitive damages may not be awarded against the Board.

As to the individual Defendants in their official capacity, the Alabama Supreme Court has held that "[i]t is settled beyond cavil that State officials cannot be sued for damages in their official capacities." *Ex parte Montgomery County Bd. of Educ.,* 88 So.3d at 841 (quoting *Burgoon v. Alabama State Dep't of Human Res.,* 835 So.2d 131, 132–33 (Ala.2002)); *Ex parte Dangerfield,* 49 So.3d 675, 681 (Ala.2010) (claims against a State official in his or her official capacity seeking damages are barred by the doctrine of immunity). Thus, punitive damages may not be awarded against the individual Defendants in their official capacity.

Defendants also argue that punitive damages may not be awarded on the Plaintiffs' claims that are based upon federal law. As to Plaintiffs' Title VI claim against the Board, Congress has expressly abrogated the states' Eleventh Amendment immunity in 42 U.S.C. 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation . . . Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.") However, "punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act[.]" *Barnes v. Gorman,* 536 U.S. 181, 183, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002).

As to Plaintiffs' claims brought pursuant to Section 1983, Congress has not abrogated Eleventh Amendment immunity. *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524–25 (11th Cir.1990). However, "[i]n a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities." *Young Apartments, Inc. v. Town of Jupiter, FL,* 529 F.3d 1027, 1047 (11th Cir.2008) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)); *Mouton v. School Bd. of Collier County,* 2012 WL 3639004, *4 n.4 (M.D. Fla. Aug. 23, 2012) (finding that school

board was immune from punitive damages under Section 1983) (citing *Young Apartments, Inc.,* 529 F. 3d at 1047). Therefore, Defendants' motion is **GRANTED** as to Plaintiffs' claims for punitive damages against the Board and the individual Defendants in their official capacity.

### G. Defendants' motion for judgment on the pleadings on basis that Plaintiffs' state law tort claims against the Board and the individual Defendants in their official capacity are barred by state immunity under Article I, § 14, Constitution of Alabama[12]

Plaintiffs bring Counts X through XVI alleging false imprisonment and Counts XVII through XXIII alleging outrage. Under Alabama law, these claims are considered tort claims. *Walker v. City of Huntsville*, 62 So.3d 474, 502 (Ala. 2010) (finding that the tort of outrage is an intentional tort); *Skinner v. Bevans,* 116 So.3d 1147, 1153 (Ala. Civ. App. 2012) (affirming summary judgment in favor of Bevans because Skinner, as the party who had the burden of proof at trial, did not establish the elements of the tort of false imprisonment). Plaintiffs seek compensatory and punitive damages "for the injuries they sustained as a result of the Defendants' action." (Doc. 3, p. 20)

Defendants argue that the state law tort claims against the Board and the individual Defendants in their official capacity are barred by absolute state immunity under Art. I, § 14, Ala. Const.1901 and should be dismissed. Plaintiffs did not respond to this argument.

As to the Board, the Alabama Supreme Court has held that "[f]or purposes of § 14 immunity, county boards of education are considered agencies of the State" and not the local government entities that they serve and "that county boards of education are immune from tort actions." *Board of School Com'rs of Mobile County v. Weaver,* 99 So.3d 1210, 1217 (Ala.2012) (quoting *Ex parte Monroe County Board of Education,* 48 So.3d 621 (Ala.2010)); *see Ex parte Bessemer Bd. of Educ.,* 68 So.3d 782, 789 (Ala.2011) ("Local school boards are agencies of the

---

[12] Defendants did not move for judgment on the pleadings as to Plaintiffs' state law tort claims against the individual Defendants in their individual capacity.

State, not of the local governmental units they serve, and they are entitled to the same absolute immunity as other agencies of the State.").

As to the Board Members in their official capacity, the Alabama Supreme Court has also held that tort claims requesting money damages against school board members in their official capacity are barred by Art. I, § 14, Ala. Const.1901. In *Ex parte Boaz City Bd. of Educ.*, 82 So. 3d 660 (Ala. 2011), the Court explained that "the tort claims alleged against the Board members in their official capacities requesting money damages also are due to be dismissed because the Board members enjoy the same constitutional immunity as does the Board." *Id*. at 662 (citing *Ex parte Bessemer Bd. of Educ.,* 68 So.3d 782, 789 (Ala. 2011) (" 'Not only is the State immune from suit under § 14, but "the State cannot be sued indirectly by suing an officer in his or her official capacity." ' ") (quoting *Alabama Dep't of Transp. v. Harbert Int'l, Inc.,* 990 So.2d 831, 839 (Ala. 2008))); and *Ex parte Dangerfield,* 49 So.3d 675, 681 (Ala. 2010) (holding that all claims against a state official in his or her official capacity for damages are barred by the doctrine of immunity).

As to Superintendent Lee, the Alabama Supreme Court has recognized that a school superintendent is a State officer. *Board of School Commissioners of Mobile County v. Weaver*, 99 So. 3d 1210, 1221 (Ala. 2012). In that regard, "[n]ot only is the State immune from suit under §14, but the State cannot be sued indirectly by suing an officer in his or her official capacity." 99 So. 3d at 1218. Thus, Superintendent Lee in his official capacity as a state officer is also immune. As to Principal Mansell and Principal Anderson, sovereign immunity from tort has been found to extend to principals in their official capacities. *Hickman v. Dothan City Bd. Of Educ.,* 421 So.2d 1257, 1259 (Ala.1982) (affirming dismissal of tort claims against school board employees sued in their official capacities on basis that they were entitled to sovereign

immunity).

However, there are "exceptions" to § 14 immunity for actions against State officials.  In *Board of School Com'rs of Mobile County v. Weaver,* 99 So.3d 1210, (Ala. 2012), the Supreme Court of Alabama explained that as to state officials sued in their official capacities that:

"The immunity afforded State officers sued in their official capacities, however, is not unlimited:

" '[Section 14] immunity from suit does not extend, in all instances, to officers of the State acting in their official capacity. *Unzicker v. State,* 346 So.2d 931 (Ala.1977). In limited circumstances the writ of mandamus will lie to require action of state officials. This is true where discretion is exhausted and that which remains to be done is a ministerial act. See *Hardin v. Fullilove Excavating Co., Inc.,* 353 So.2d 779 (Ala.1977); *Tennessee & Coosa R.R. Co. v. Moore,* 36 Ala. 371 (1860). Action may be enjoined if illegal, fraudulent, unauthorized, done in bad faith or under a mistaken interpretation of law. *Wallace v. Board of Education of Montgomery Co.,* 280 Ala. 635, 197 So.2d 428 (1967). If judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof. The writ will not lie to direct the manner of exercising discretion and neither will it lie to compel the performance of a duty in a certain manner where the performance of that duty rests upon an ascertainment of facts, or the existence of conditions, to be determined by an officer in his judgment or discretion. See *Barnes v. State,* 274 Ala. 705, 151 So.2d 619 (1963).'

" *McDowell–Purcell, Inc. v. Bass,* 370 So.2d 942, 944 (Ala.1979).

"Moreover, certain causes of action are not barred by § 14:

" ' "There are four general categories of actions which in *Aland v. Graham,* 287 Ala. 226, 250 So.2d 677 (1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and

(4) actions brought under the Declaratory Judgments Act ... seeking construction of a statute and its application in a given situation. 287 Ala. at 229–230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. *Wallace v. Board of Education of Montgomery County,* 280 Ala. [635] at 639, 197 So.2d 428 [ ( 1967) ]; *Unzicker v. State,* 346 So.2d 931, 933 (Ala.1977); *Engelhardt v. Jenkins,* 273 Ala. 352, 141 So.2d 193 (1962)." '

" *Drummond Co. v. Alabama Dep't of Transp.,* 937 So.2d 56, 58 (Ala.2006) (quoting [ *Ex parte* ] *Carter,* 395 So.2d [65,] 68 [ (Ala.1980) ] ) (emphasis omitted). These actions are sometimes referred to as 'exceptions' to § 14; however, in actuality these actions are simply not considered to be actions ' "against the State" for § 14 purposes.' *Patterson v. Gladwin Corp.,* 835 So.2d 137, 142 (Ala. 2002). This Court has qualified those 'exceptions,' noting that ' "[a]n action *is* one against the [S]tate when a favorable result for the plaintiff would directly affect a *contract* or property *right* of the State, or would result in the plaintiff's recovery of money from the [S]tate." ' *Alabama Agric. & Mech. Univ. v. Jones,* 895 So.2d 867, 873 (Ala.2004) (quoting *Shoals Cmty. Coll. v. Colagross,* 674 So.2d 1311, 1314 (Ala.Civ.App.1995)) (emphasis added in *Jones*)."

*Weaver*, at 1218-1219 (citing *Alabama Department of Transportation v. Harbert International, Inc.*, 990 So.2d 831, 839-840 (Ala.2008)) (emphasis and bracketed text in original).

Plaintiffs did not respond and therefore, did not argue that their tort claims against the individual Defendants in their official capacity fall within any of the exceptions to immunity from tort identified in *Weaver*.   Review of the claims and the prayer for relief in the light most favorable to the Plaintiffs indicates that they are seeking compensatory and punitive damages for the injuries sustained as a result of Defendants' actions.   Thus, their tort claims are an action "against the State" because a "favorable result" for the Plaintiffs "would result in the plaintiff's

recovery of money from the [State of Alabama]".  *Weaver*, at 1219.   Therefore, Defendants'

motion for judgment on the pleadings as to Plaintiffs' state law tort claims for false

imprisonment and outrage against the Board and the individual Defendants in their official

capacity is **GRANTED** and these claims are dismissed as barred by Art. I, § 14, Ala.

Const.1901.

      Defendants did not move for judgment as a matter of law as to Plaintiffs' claims for false

imprisonment in Counts X through XVI against the individual Defendants in their individual

capacity.  Therefore, these state law claims remain pending before the Court through its exercise

of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  However, as to the five Plaintiffs

who are the next friends or parents of the five students with IEPs, the Court has granted

judgment as a matter of law in favor of Defendants as to their federal claims on basis that they

failed to exhaust their administrative remedies under the IDEA.  Thus, they no longer have

federal claims pending before the Court.

      In that regard, § 1367(c)(3) provides that the "district courts may decline to exercise

supplemental jurisdiction over a claim under subsection (a) if - -  (3) the district court has

dismissed all claims over which it has original jurisdiction[.]"   The Eleventh Circuit "ha[s]

encouraged district courts to dismiss any remaining state claims when . . . the federal claims have

been dismissed prior to trial." *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1089 (11th Cir. 2004)

(per curiam).  *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless

decisions of state law should be avoided both as a matter of comity and to promote justice

between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if

the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional

sense, the state claims should be dismissed as well."); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119

(11th Cir. 1999) ("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims.' " (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir. 1984) (citing *Gibbs,* 383 U.S. at 726))); *Dockens v. Dekalb Cnty. Sch. Sys.,* 441 Fed. Appx. 704, 709 (11th Cir. 2011) (per curiam) ("Once the district court properly granted summary judgment for the School System on the FMLA claims, no federal claims remained. It was not abuse of discretion for the court to decline supplemental jurisdiction over the state law claim.").[13] Because the Court has dismissed the federal claims of the five Plaintiffs whose students have IEPs, the Court finds that dismissal without prejudice of the state law claims for false imprisonment is appropriate.

The Court finds the availability of the IDEA administrative process to be another reason for declining to exercise jurisdiction. After their IDEA claims are exhausted, the five Plaintiffs may file any action they deem appropriate and adjudicate all their claims against the Defendants in the same action. *Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1569 (11th Cir.1994) (explaining that when one or more of the four factors in § 1367(c) are present, "the additional *Gibbs* considerations may, by their presence or absence, influence the court in its

---

[13] The five Plaintiffs' remaining state law claims for false imprisonment under Alabama law are subject to a six-year statute of limitation. Ala. Code § 6-2-34 "The following must be commenced within six year: (1) Actions for any trespass to person or liberty, such as false imprisonment…"). The Court cannot ascertain from the complaint when their respective limitations periods may have begun to run but nevertheless, the five Plaintiffs are reminded that 28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." *See Roden v. Wright*, 611 So. 2d 333 (Ala. 1992) (finding that pursuant to 28 U.S.C. § 1367(d), Roden timely filed his suit in state court within thirty days of the order entering summary judgment on Roden's § 1983 claims in federal court); *Martinez v. City of Orlando,* 2009 WL 3048486, at *2 (M.D. Fla. Sept. 21, 2009) ("28 U.S.C. § 1367(d) provides that the statute of limitations is tolled while state law claims are pending in federal court until thirty days after an order of dismissal. Therefore, Plaintiff may pursue her state claims in state court if she so chooses, as long as she files in a timely manner."); *Lewis v. DeKalb Cnty. Bd. of Educ.,* 2013 WL 6073519, at *8 (N.D. Ala. Nov. 18, 2013).

decision concerning the exercise of such discretion. Such factors include judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together.") (citation omitted)  Accordingly, **Counts X, XI, XIII, XIV, and XV** for false imprisonment are **DISMISSED without prejudice**.  *See, e.g., Ingram v. Sch. Bd. of Miami-Dade Cnty.,* 167 Fed. Appx. 107, 109 (11th Cir. 2006) (per curiam) ("When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without preudice so that the complaining party may pursue the claim in state court.) (citation omitted)

**H. Defendants' motion for judgment on the pleadings as to Plaintiffs' tort of outrage claims**

Defendants argue the motion for judgment on the pleadings is due to be granted as to Plaintiffs' tort of outrage claims. Defendants argue that the tort of outrage is extremely limited in Alabama and that the State has recognized only three types of cases that constitute outrage claims: cases that involve wrongful conduct regarding family burials, cases involving insurance agents employing barbaric means to coerce insureds to settle, and cases involving particularly egregious sexual harassment. Defendants argue that since Plaintiffs' allegations do not fit into these categories, they have failed to state a claim upon which relief can be granted and their tort of outrage claims should be dismissed.

Plaintiffs did not respond to this allegation. However, as stated herein, the Court still must look to the face of the complaint, accepting all factual allegations as true and construing the complaint in the light most favorable to the Plaintiffs to determine whether the tort of outrage has been sufficiently plead to survive a motion for judgment on the pleadings.  Since the Board and the individual Defendants are immune from suit for tort in their official capacities, the Court

must ascertain whether judgment on the pleadings is due to be granted in favor of the individual

Defendants in their individual capacity.

> The Plaintiffs plead as follows:

> By sanctioning, approving, and authorizing the extreme and outrageous conduct against R.P. described herein, Defendants engaged in extreme and outrageous conduct in violation of Alabama law. As a result of Defendants' policy, practices, and failure to adequately train employees of the Baldwin County School System, R.P. suffered emotional distress and psychological trauma that no reasonable child could be expected to endure.

> Defendants acted willfully, recklessly, maliciously, and with a callous disregard or indifference to the rights of R.P.

(Doc. 3, p. 18).   Plaintiffs make substantially identical allegations as to each of the seven

students.  (*Id.,* p. 18-20)  The Court has considered these allegations in conjunction with the

allegations of specific incidents of discipline involving each of the seven students, and taken all

as true as required at this stage of the litigation. (Doc. 3, p. 11-15)

Under Alabama law, "[t]he four elements of the tort of intentional infliction of emotional

distress, which is also known as the tort of outrage, are: (1) the actor intended to inflict emotional

distress, or knew or should have known that emotional distress was likely to result from his

conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the

plaintiff distress; and (4) the distress was severe." *Martin v. Hodges Chapel, LLC,* 89 So.3d 756,

763 (Ala.Civ.App.2011) (internal quotes omitted).   "It is clear, however, that the tort of outrage

is viable only when the conduct is 'so outrageous in character and so extreme in degree as to go

beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in

a civilized society.' " *Ex parte Bole,* 103 So.3d 40, 52 (Ala.2012) (citations omitted); *Thomas v.

Williams,* 21 So.3d 1234, 1237–1238 (Ala.Civ.App.2008).

The Alabama courts have recognized the tort of outrage in limited circumstances: "(1)

wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment.' " *Little v. Robinson,* 72 So.3d 1168, 1172 (Ala. 2011) (quoting *Potts v. Hayes,* 771 So.2d 462, 465 (Ala. 2000) (internal citations omitted)).  The Alabama Supreme Court also affirmed judgment on an outrage claim against a family physician that exchanged addictive drugs for sex with a teen-age boy over a period of years, which resulted in the boy's drug addiction. The mother had asked the physician to counsel the boy about his parents' divorce.  *O'Rear v. B.H.,* 69 So.3d 106 (Ala. 2011).

Plaintiffs' claims do not fit within the categories identified by the Alabama Supreme Court decisions.  Plaintiffs do not allege that the individual Defendants in their individual capacity personally placed the students in the black boxes or locked closets, or otherwise directly participated in the actual discipline.  Rather they allege that the individual Defendants sanction of a policy or practice to apply this method of discipline and their failure to train the employees, resulted in the injuries to the students.  Taking the allegations as true and construing them in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have not sufficiently alleged conduct **by the Defendants** that may, should the allegations be found to be true, be considered extreme, beyond the bounds of decency, atrocious and intolerable in a civilized community. Therefore, Defendants' motion for judgment on the pleadings as to Plaintiffs' claims for outrage **(Counts XVII through XXIII)** against the individual Defendants in their individual capacity is **GRANTED.**

**I. Defendants' motion for judgment on the pleadings on basis that the first amended complaint does not state a valid claim for declaratory relief**

Defendants argue that the allegations directed toward declaratory relief are insufficient to state a claim for relief.  Defendants argue that Plaintiffs allegations do not establish the violation

of a federally protected right and that they implicitly admit that adequate legal remedies exist because they demanded money damages. Plaintiffs respond that their first amended complaint seeks declaratory relief based the Plaintiffs practice of targeting students on basis of race by placing them in the black boxes and locked closet and upon "a likely continuous and ongoing violation of their constitutional rights and the rights of others by Defendants." (Doc. 32, p. 7)

In *Elend v. Basham,* 471 F.3d 1199, 1207 (11th Cir.2006), the Eleventh Circuit explained that "a prayer for injunctive and declaratory relief requires an assessment ... of whether the plaintiff has sufficiently shown a real and immediate threat of future harm."  Injunctive and declaratory relief calls into question issues of standing to obtain the relief. "When standing is questioned at the pleading stage, as it is here, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. (citations omitted).  The Court "accept[s] as true all material allegations contained in the complaint and construe the complaint in a light most favorable to the complaining party." *Id*. (citations omitted) "[I]in the context of a Rule 12(b)(1) challenge to standing, [the court must] consider not only the pleadings, but to examine the record as a whole to determine whether we are empowered to adjudicate the matter at hand." *Id.* citing *Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229, 1242 (11th Cir.2003).  "Where [the Eleventh Circuit has] found a sufficient imminence of future harm based on a past injury, the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same manner as the previous injury." *Eland*, at 1207.

After an overall review of the first amended complaint in the light most favorable to the Plaintiffs, taking their allegations as true, the Court finds that they have sufficiently plead a claim for declaratory and injunctive relief "that is plausible on its face."  *Twombly,* 550 U.S. at 570.

Plaintiffs D.C. and R.L. seek injunctive relief to require Defendants to cease their unconstitutional and unlawful practices of using the black boxes and locked closets to discipline and punish the students.  Plaintiffs allege that the students are still enrolled in the Baldwin County School System, that Defendants continue to use the black boxes and locked closets "to this day in the Baldwin County School System", and that Court should enjoin this continued use, otherwise irreparable harm to the students will continue. (Doc. 3, p. 5-6, 9-10)  Plaintiffs also specifically plead that injunctive relief was necessary because they cannot place their children in schools outside the system under current zoning requirements and they cannot afford to enroll their children in private schools.  (Doc. 3, p. 10) *See 31 Foster Children v. Bush,* 329 F.3d 1255, 1263 (11th Cir.2003) (the Eleventh Circuit found standing for children who were in the foster care system involuntarily but no standing for children who were no longer in the system or had ran away because it was speculative as to whether they would return to foster care).  Therefore, Defendants' motion on basis that Plaintiffs' failed to allege a claim for declaratory and injunctive relief is **DENIED**

### IV. <u>Conclusion</u>

Accordingly, it is ORDERED as follows:

1)  Defendants' motion for judgment on the pleadings to dismiss all federal claims raised by the students with IEPs -  **R.P., D.P., A.W., L.S., and C.M.** - is **GRANTED** and these claims are **DISMISSED** for failure to exhaust the administrative remedies under the IDEA.

2) Defendants' motion to dismiss the claims of **D.C. and R.L.** for "judicial economy" is **DENIED**.

3) Defendants' motion for judgment on the pleadings as to **D.C.'s and R.L.'s** § 1983 claims (equal protection and excessive discipline) is **DENIED at this time**.  As to the equal

protection claim, Plaintiffs are **ORDERED** to file on or before **October 20, 2014,** a second

amended complaint to clarify and expand on their equal protection claim **on behalf of D.C. and**

**R.L.** [14]

 4) Defendants' motion for judgment on the pleadings as to Plaintiffs' claims for race

discrimination brought pursuant to Title VI (Count I) **on behalf of D.C. and R.L.** is **DENIED at**

**this time** as to the Board. Plaintiffs are **ORDERED** to file, on or before **October 20, 2014,** a

second amended complaint to clearly allege the "race, color, or national origin" of students **D.C.**

**and R.L.**

 5) Defendants' motion for judgment on the pleadings is **GRANTED** as to all Title VI

claims against the individual Defendants in their individual or official capacity and these claims

are **DISMISSED.**

 6) Defendants' motion for judgment on the pleadings, on basis that the Plaintiffs' official

capacity claims against the individual Defendants are duplicative of claims against the Board, is

**DENIED** to the extent that Plaintiffs have brought civil rights claims for prospective injunctive

relief against the individual Defendants in their official capacities.  The motion is **GRANTED**,

to the extent that Plaintiffs bring their claims against the individual Defendants in their official

capacity for non-injunctive relief and these claims are **DISMISSED**.

 7) Defendants' motion for judgment on the pleadings on the basis that Plaintiffs' claim

for punitive damages against the Board and the individual Defendants in their official capacity

are barred, is **GRANTED.** [15]

---

[14] The second amended complaint should not incorporate the preceding paragraphs, but rather should specifically state what facts are relevant to the claims.

[15]  The individual Defendants did not move as to punitive damages against them in their individual capacity.

8) Defendants' motion for judgment on the pleadings on the basis that Plaintiffs' state law tort claims against the Board and the individual Defendants in their official capacity[16] are barred by state immunity under Article I, § 14, Constitution of Alabama, is **GRANTED**.

9) Defendants' motion for judgment on the pleadings as to Plaintiffs' tort of outrage claims is **GRANTED.**

10) Defendants' motion for judgment on the pleadings, on basis that the first amended complaint does not state a valid claim for declaratory relief is **DENIED.**

DONE and ORDERED this the 7th day of October 2014.


/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

[16] Defendants did not move as to Plaintiffs' state law tort claims for false imprisonment against the individual Defendants in their individual capacity.